Hilary L. Preston, (*pro hac vice pending*)
  hpreston@velaw.com
VINSON & ELKINS L.LP.
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone: (212) 237-0129
Facsimile: (917) 849-5342

Bruce L. Ishimatsu (CSBN 86145)
  bruce@ishimatsulaw.com
ISHIMATSU LAW GROUP P.C.
4712 Admiralty Way, No. 1012
Marina del Rey, CA 90292
Telephone: (310) 200-4060
Facsimile: (310) 496-1540

Attorneys for Defendant
AVID TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EUREKA DATABASE SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AVID TECHNOLOGY, INC.,<br><br>Defendant. | Case No.: 2:19-cv-07583-PSG-PJW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AVID TECHNOLOGY, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Hearing Date: January 6, 2020<br>Hearing Time: 1:30 PM<br>Courtroom: 6A<br>Judge: Judge Philip S. Gutierrez |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

I.    ALL THREE COUNTS SHOULD BE DISMISSED AS THE
      ASSERTED PATENTS ARE DIRECTED TO INELIGIBLE
      SUBJECT MATTER AND THUS EUREKA'S CLAIMS FAIL AS A
      MATTER OF LAW. ....................................................................................2

      A.    The Federal Circuit Routinely Invalidates Claims Similar to
            Those in the Asserted Patents. ....................................................5

      B.    The '189 and '287 Patents Are Directed to the Abstract Idea of
            Reviewing Research Notes, Which Is Ineligible Subject Matter
            under *Alice*'s Two-Step Test. ....................................................7

            1.    *The '189 and '287 Patents Fail Step 1 of* Alice *as They
                  Claim the Abstract Idea of Basic Library Research.*.....................8

            2.    *The '189 and '287 Patents Fail Step 2 of* Alice *as They
                  Fail to Recite Anything More than an Abstract Idea.* .................15

      C.    The '144 Patent Is Directed to the Abstract Idea of Writing
            Research Notes, Which Is Ineligible Subject Matter under
            *Alice*'s Two-Step Test. ...........................................................16

            1.    *The '144 Patent Merely Adds a Single Limitation to the
                  Claims of the '189 and '287 Patents, Which Is also an
                  Abstract Idea under* Alice *Step 1.*...................................16

            2.    *The Single Additional Limitation of the '144 Patent Fails
                  Step 2 of* Alice *because Eureka Admits It Can Be
                  Performed by a Human, and Therefore It Does Not
                  Improve Computer Technology.* ....................................18

            3.    *Eureka's Attempt to Bolster the '144 Patent with
                  Manifestly Incorrect Allegations in the Complaint Does
                  Not Save the '144 Patent from Invalidity.* ...............................18

II.   ALL THREE COUNTS SHOULD BE DISMISSED AS EUREKA'S
      DEFICIENT COMPLAINT FAILS THE PLEADING
      REQUIREMENTS SET FORTH IN *TWOMBLY* & *IQBAL* ............................20

CONCLUSION.............................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016) .................................................................8, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)..................................................................................passim

*Apollo Fin., LLC v. Cisco Sys.*, Inc.,
  190 F. Supp. 3d 939 (C.D. Cal. 2016) ..............................................................26

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016) ................................................................passim

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................26

*Bascom Research, LLC v. LinkedIn, Inc.*,
  77 F. Supp. 3d 940 (N.D. Cal 2015) ..................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................25, 26

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ...............................................................2, 6, 7

*Clarilogic, Inc. v. FormFree Holdings Corp.*,
  681 F. App'x. 950 (Fed. Cir. 2017) ....................................................................20

*Cloud Satchel, LLC v. Amazon.com, Inc.*,
  76 F. Supp. 3d 553 (D. Del. 2014) .....................................................................20

*CMG Fin. Servs. v. Pac. Trust Bank, F.S.B.*,
  50 F. Supp. 3d 1306 (C.D. Cal. 2014), *aff'd*, 616 F. App'x 420 (Fed.
  Cir. 2015).............................................................................................................11

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ast
  Es'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ...........................................................................7

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) ...........................................................................9

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ...................................................................10, 11

*Enfish v. Microsoft*,
  822 F.3d 1327 (Fed. Cir. 2016) ...........................................................................6

*Genetic Techs. Ltd. v. Merial L.L.C.*,
  818 F.3d 1369 (Fed. Cir. 2016) ...........................................................................4

*In re Katz Interactive Call Processing Patent Litig.*,
   639 F.3d 1303 (Fed. Cir. 2011)), *aff'd sub nom. Cloud Satchel, LLC
  v. Barnes & Noble, Inc.*, 626 F. App'x. 1010 (Fed. Cir. 2015)............................20

*In re TLI Communications LLC Patent Litigation*,
  823 F.3d 607 (Fed. Cir. 2016) ............................................................8, 9, 10, 19

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) ...........................................................................9

ii

MEMORANDUM OF POINTS AND AUTHORITIES          CASE NO. 2:19-CV-07583-PSG-PJW
IN SUPPORT OF AVID TECHNOLOGY, INC'S
MOTION TO DISMISS

*IPLearn-Focus, LLC v. Microsoft Corp.*,
No. 14-cv-00151-JD, 2015 WL 4192092, (N.D. Cal. July 10, 2015),
*aff'd*, 667 F. App'x 773 (Fed. Cir. 2016) ...................................................... 19

*MACOM Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*,
No. 2:16-cv-02859-CAS (PLAX), 2017 WL 3449596 (C.D. Cal. June
5, 2017) ............................................................................................................ 26

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) ........................................................................................... 19

*OIP Techs. Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) ......................................................................... 4

*Proxyconn Inc. v. Microsoft Corp.*,
No. SACV 11-1681 DOC (ANx), 2012 WL 1835680 (C.D. Cal. May
16, 2012) .......................................................................................................... 26

*SAP Am. Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) .......................................................................... 8

*Secure Mail Sols. LLC v. Universal Wilde, Inc.*,
169 F. Supp. 3d 1039 (C.D. Cal. 2016), *aff'd,*, 873 F.3d 905 (Fed.
Cir. 2017) ......................................................................................................... 11

*Seven Arts Filmed Entm't Ltd v. Content Media Corp.*,
733 F.3d 1251 (9th Cir. 2013) ..................................................................... 24, 25

*TeleSign Corp. v. Twilio, Inc.*,
No. CV 16-2106 PSG (SSx), 2016 WL 4703873 (C.D. Cal. Aug. 3,
2016) ................................................................................................................. 26

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) ...................................................................... 5, 19

*Yi-Ping Lin v. Transform Partners LLC*,
No. 18-cv-1933-DMS (KSC), 2019 WL 446403 (S.D. Cal. Feb. 5,
2019) ................................................................................................................. 26

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1, 3

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Avid Technology, Inc. ("Avid" or "Defendant") files this motion to dismiss the complaint filed by Eureka Database Solutions, LLC ("Eureka" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6).  Avid respectfully requests that the complaint be dismissed in its entirety because the asserted patents are invalid, and because the complaint fails to plausibly state a claim for patent infringement.

### Preliminary Statement

Eureka claims that Avid infringes three long-expired patents, all of which claim abstract ideas.  But if history is any teacher,  Eureka expects a quick settlement before the merits of its claims can be tested.  In each of five prior cases, Eureka has avoided such a test by resolving its claims before the complaint was answered.[1]   Eureka continues to seek these toll payments in the present case, and yet another case brought recently in Texas.[2]  Avid declines Eureka's invitation to pay that toll merely to avoid the inconvenience of litigation, and brings this motion to dismiss to invalidate the asserted patents.

The three asserted patents claim abstract ideas that attempt to monopolize practices so well-known and widespread that nearly every recipient of a formal education has practiced them.  Two of the patents are so abstract that they would

---

[1] *Eureka Database Sol'ns, LLC v. NFL Enterprises, LLC*, No. 2:10-cv-4886 (C.D. Cal. dismissed Sept. 3, 2019); *Eureka Database Sol'ns, LLC v. Agile Sports Tech., Inc.*, No. 8:18-cv-587 (D. Neb. dismissed June 3, 2019); *Eureka Database Sol'ns, LLC v. Qumu Corp.*, No. 1:17-cv-1528 (D. Mich. dismissed May 16, 2018); *Eureka Database Sol'ns, LLC v. Kaltura, Inc.*, No. 1:17-cv-1530 (D. Del. dismissed Jan. 24, 2018); *Eureka Database Sol'ns, LLC v. Panopto, Inc.*, No. 1:17-cv-1530 (D. Del. dismissed Apr. 26, 2018).

[2] *Eureka Database Sol'ns, LLC v. Haivision Network Video, Inc.*, No. 6:19-cv-576 (W.D. Tex. filed Oct. 7, 2019).

MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 2:19-CV-07583-PSG-PJW
IN SUPPORT OF AVID TECHNOLOGY, INC'S
MOTION TO DISMISS

preempt such well-known concepts as basic library research and even cite-checking this brief.  Those claims are directed to the abstract idea of referencing materials ("stored data") from research notes ("annotations").  The third patent is hardly less abstract, as its sole differentiating feature can be performed by a human *as described in its own specification*.  The Federal Circuit has not hesitated to invalidate patents like these, including those directed to retrieving information based on annotations.  *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288–89 (Fed. Cir. 2018) (invalidating claims directed to tagging content with "parameters" for indexing and retrieval).

Avid thus moves to dismiss Eureka's complaint because none of the asserted patents are directed to patentable subject matter, nor does its complaint show that a claim to relief is plausible.  By declaring the asserted patents invalid for lack of patentable subject matter, and dismissing the complaint, the Court can bring Eureka's extortionate campaign to an end—both for Avid, and for all other defendants that might be targeted by Eureka.

## I.  ALL THREE COUNTS SHOULD BE DISMISSED AS THE ASSERTED PATENTS ARE DIRECTED TO INELIGIBLE SUBJECT MATTER AND THUS EUREKA'S CLAIMS FAIL AS A MATTER OF LAW.

Claims directed to abstract ideas, laws of nature, and natural phenomena are not eligible for patenting, because these concepts form the "basic tools of scientific and technological work." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citations omitted).  The "abstract ideas" exception embodies "the longstanding rule that an idea of itself is not patentable." *Id.* at 218 (citation omitted).  Otherwise, "monopolization of those tools through the grant of a patent might tend to impede

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF AVID TECHNOLOGY, INC'S
MOTION TO DISMISS

CASE NO. 2:19-CV-07583-PSG-PJW

1  innovation more than it would tend to promote it, thereby thwarting the primary object

2  of the patent laws." *Id*. at 216 (citation omitted).

3      Here, Eureka asserts U.S. Patent 6,173,287 (the "'287 Patent"); U.S. Patent

4  6,311,189 (the "'189 Patent"); and U.S. Patent 6,332,144 (the "'144 Patent")

5  (collectively, the "Asserted Patents").   The '144 Patent is directed to the abstract idea

6  of writing notes.   The '287 Patent and the '189 Patent are directed to the abstract idea

7  of reviewing such notes.   Thus, the claims of the Asserted Patents purport to

8  monopolize one of the most fundamental and basic "tools of scientific and

9  technological work." *Alice*, 573 U.S. at 216.   As such, all the Asserted Patents are

10 invalid as directed to abstract ideas.

11

12     Whether a claim is drawn to patent-ineligible subject matter under Section 101

13 is an issue of law that may be resolved at the pleading stage under Fed. R. Civ. P.

14 12(b)(6).   *OIP Techs. Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).

15 No discovery or claim construction is needed to resolve this question when, as here,

16 the basic character of the claims can be easily understood on their face for purposes of

17 a Section 101 analysis. *See Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374

18 (Fed. Cir. 2016).

19

20     Resolving patent eligibility at the pleading stage is an important mechanism to

21 prevent suits such as this one, where plaintiffs have asserted vague and expired patents

22 in an inadequate complaint with an expectation of quick settlement.   As Judge Mayer

23 explained:

24

25         The scourge of meritless infringement claims has continued

26         unabated for decades due, in no small measure, to the ease of

27

28

3

asserting such claims and the enormous sums required to defend against them.  Those who own vague and overbroad business method patents will often file nearly identical patent infringement complaints against a plethora of diverse defendants, and then demand a quick settlement at a price far lower than the cost to defend the litigation. . . Addressing section 101 at the threshold will thwart attempts—some of which bear the indicia of extortion—to extract nuisance value settlements from accused infringers.

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) (citations omitted).  All of Judge Mayer's concerns are present in this case.

Courts apply a two-step analysis to determine whether a patent is invalid as directed to an abstract idea.  First, a court must determine whether the claims are directed to a patent ineligible concept, such as an abstract idea.  *Alice*, 573 U.S. at 217.  Second, the court must decide whether the claims add an "inventive concept"—"an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Id.* (citation omitted).  Unless these additional elements add something significant to the abstract idea, the claim is ineligible for patent protection.  *Id.*  Merely implementing an abstract idea using well-known computer components or functions, limiting the idea to a particular technological environment, or adding other token steps is insufficient to save a claim.  *Id.* at 221–25. Likewise, a claim that merely describes an "effect or result dissociated from any method by which it is accomplished is not directed to patent-

eligible subject matter." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016).

### A.    The Federal Circuit Routinely Invalidates Claims Similar to Those in the Asserted Patents.

To determine whether a claim is directed to an abstract idea, it is often "sufficient to compare [the] claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish v. Microsoft*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Federal Circuit has determined on numerous occasions that generic data annotation, indexing, and retrieval claims, similar to those in the Asserted Patents, are directed to abstract ideas and are thus invalid under Section 101.

For example, in *BSG Tech*, the claims were directed to a "self-evolving generic index" for organizing information in a database. 899 F.3d at 1283. There, the Federal Circuit affirmed a grant of summary judgment of invalidity because the claims were "directed to the abstract idea of considering historical usage information wh[en] inputting data." *Id.* at 1285. The court rejected arguments that the claims were patent-eligible because they require a specific database table structure, because such configuration merely "provides a generic environment in which the claimed method is performed." *Id.* at 1286. The court also rejected an argument that "allow[ing] users to quickly and efficiently access hundreds of thousands or even millions of records, and still find only those few records that are relevant" sufficed as a non-abstract improvement in database technology. *Id.* at 1288. Such improvements are not an improvement to database technology, but are merely the benefits that flow from performing an abstract idea in conjunction with well-known database structures. *Id.*

In short, "an improvement to the information stored by a database is not equivalent to an improvement in the database's functionality." *Id*.

*BSG Tech* is but one of many examples of such generic data storage and retrieval claims that are routinely invalidated by the Federal Circuit. In *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, the Federal Circuit affirmed a Rule 12(b)(6) dismissal of a complaint where the claims were "drawn to the abstract idea of collecting data, recognizing certain data within the collected data set, and storing that recognized data in a memory." 776 F.3d 1343, 1347 (Fed. Cir. 2014) (internal numbering omitted). Similarly, in *SAP Am. Inc. v. InvestPic, LLC*, the claims were directed to selecting and storing information, generating an analysis of it, and providing the analysis to a user. 898 F.3d 1161, 1164–65 (Fed. Cir. 2018) (judgment on the pleadings). The Federal Circuit found that such steps were likewise abstract. *Id.* at 1167. In *Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, the Federal Circuit found claims ineligible for patenting when directed to the abstract idea of "streaming user-selected content to a portable device," where the patent claimed a "network based media managing system" for streaming a "library of content" to a "handheld wireless device." 838 F.3d 1266, 1267–69, 1272 (Fed. Cir. 2016) (motion to dismiss). The features of the claimed system recited above were "described and claimed generically rather than with the specificity necessary to show how those components provide[d] a concrete solution to the problem addressed by the patent." *Id.* at 1271.

In *In re TLI Communications LLC Patent Litigation*, the Federal Circuit found that claims directed to the classification and storage of information was directed to an abstract idea where the claims recited "use of conventional or generic technology in a

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF AVID TECHNOLOGY, INC'S
MOTION TO DISMISS

CASE NO. 2:19-CV-07583-PSG-PJW

nascent but well-known environment." 823 F.3d 607, 612 (Fed. Cir. 2016) (motion to dismiss). The patent there merely recited "a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner" rather than claiming a specific device or solution for achieving the purported improvement in the patent, which was to improve archiving of digital images for faster and easier access to archived information. *Id.* at 611–12.

Finally, in *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, the Federal Circuit determined that claims reciting "a process of taking two data sets," which were "generated by taking existing information . . . and organizing this information into a new form" and "combining them into a single data set" was an unpatentable abstract idea. 758 F.3d 1344, 1351 (Fed. Cir. 2014) (summary judgment); *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (explaining claims are abstract when they "are, at their core, directed to the abstract idea of collecting, displaying, and manipulating data").

## B. The '189 and '287 Patents Are Directed to the Abstract Idea of Reviewing Research Notes, Which Is Ineligible Subject Matter under *Alice*'s Two-Step Test.

Here, the asserted claims of the '189 and '287 Patents are directed to the abstract idea of reviewing research notes. They fail to recite any specific solution for achieving this result. *See Apple*, 842 F.3d at 1244 (such claims are generally invalid). Instead, the patents list basic functional steps—"searching a plurality of stored annotations," "searching a plurality of stored data identifiers associated with the plurality of stored annotations," "accessing the item of interest at the location of interest"—absent any specific way of achieving them. In fact, these two patents are so abstract that they would preempt basic library research, and even cite-checking this brief, as further

explained below.  As the Federal Circuit has held, "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, [is] essentially mental processes within the abstract-idea category." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *see also, e.g.*, *In re TLI Commc'ns*, 823 F.3d at 613.  Accordingly, such ideas are not patentable inventions.

1.   *The '189 and '287 Patents Fail Step 1 of* Alice *as They Claim the Abstract Idea of Basic Library Research.*

At step one, courts examine the claims as a whole to determine whether their "character as a whole" or "focus" is an abstract idea.  *Elec. Power Grp.*, 830 F.3d at 1353.  Courts consider whether the claims are directed to "a specific means or method that improves the relevant technology or are directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Apple, Inc.*, 842 F.3d at 1241(citation omitted).  Patents that do not claim a particular way of carrying out an invention, but instead "merely claim the resulting systems" or "are directed to certain functionality" are invalid.  *Id.*.

Here, the patents are directed to the abstract idea of reviewing research notes, and thus would preempt not only technical innovation in a field, but would preempt one of the most fundamental building blocks of research itself.  Claim 1 of the '287 Patent, which is representative of both the '287 Patent and the '189 Patent,[3] recites:

---

[3] It is well-established that courts do not need to assess every claim in conducting a Section 101 analysis. *See Secure Mail Sols. LLC v. Universal Wilde, Inc.*, 169 F. Supp. 3d 1039, 1046, 1056 (C.D. Cal. 2016) (citation omitted) ("in the Court's view, '[n]one of the remaining asserted dependent or independent claims differ substantially' from the claims analyzed above"), *aff'd*, 873 F.3d 905 (Fed. Cir. 2017); *CMG Fin. Servs. v. Pac. Trust Bank, F.S.B.*, 50 F. Supp. 3d 1306, 1314 (C.D. Cal. 2014) (citation omitted) ("Comparing the language of the systems claims with that of the method claims, it is clear that these are functionally identical . . . . Thus, they must be treated as equivalent for purposes of the § 101 analysis."), *aff'd*, 616 F. App'x 420 (Fed. Cir. 2015); *see also Bascom Research, LLC v. LinkedIn, Inc.*, 77 F. Supp. 3d 940, 943 n.3, 950 (N.D. Cal 2015).

1. A method for accessing an item of interest within a particular one of a plurality of stored representations of data, the method comprising the steps of:

[A] searching a plurality of stored annotations corresponding to different items within the plurality of stored representations of data to locate an annotation of interest corresponding to the item of interest, the annotation of interest having an associated data identifier and an associated location identifier, the associated data identifier corresponding to the particular one of the plurality of stored representations of data, the associated location identifier corresponding to a location of interest within the particular one of the plurality of stored representations of data;

[B] searching a plurality of stored data identifiers associated with the plurality of stored annotations to locate the associated data identifier and an associated address identifier, the associated address identifier corresponding to an address of the particular one of the plurality of stored representations of data within the plurality of stored representations of data; and

[C] accessing the item of interest at the location of interest using the associated address identifier and the associated location identifier.

'287 Patent col. 24 ll. 24–47.  This sequence of steps should be familiar to anyone who has performed library research, taken notes from source documents, and attempted to retrieve those source documents, as explained in the table below:

| Claim 1 of the '287 Patent | Reviewing Research Notes |
|---|---|
| 1. A method for accessing an item of interest within a particular one of a plurality of stored representations of data, the method comprising the steps of: | Accessing a cited source ("item of interest") in a book or other resource ("within a . . . stored representation of data") stored in a library ("plurality of stored representations of data"). |
| searching a plurality of stored annotations corresponding to different items within the plurality of stored representations of data | Reviewing research notes ("stored annotations") that each include a source citation ("corresponding to different items within the plurality of stored representations of data."). |
| to locate an annotation of interest corresponding to the item of interest, | Identifying an interesting note with a citation. |
| the annotation of interest having an associated data identifier and an associated location identifier, the associated data identifier corresponding to the particular one of the plurality of | Where the interesting note indicates a source document ("associated data identifier") and a page number, playhead position, microfilm location, |

| | |
|---|---|
| stored representations of data, the associated location identifier corresponding to a location of interest within the particular one of the plurality of stored representations of data; | or other pincite ("associated location identifier"). |
| [B] searching a plurality of stored data identifiers associated with the plurality of stored annotations to locate the associated data identifier and an associated address identifier, the associated address identifier corresponding to an address of the particular one of the plurality of stored representations of data within the plurality of stored representations of data; and | Searching a library index ("plurality of stored data identifiers") with the name of the source document ("associated data identifier") to obtain a call number, shelf number, or other physical location information. ("associated address identifier"). |
| [C] accessing the item of interest at the location of interest using the associated address identifier and the associated location identifier. | Retrieving the source document and turning to the page number, running to playhead position, microfilm location, etc. |

As a second example, the '287 Patent would preempt cite-checking this brief. This brief contains statements ("annotations") that correspond to citations ("items of interest"). Confirming that those citations are accurate would also perform the steps of representative Claim 1 of the '287 Patent.

| Claim 1 of the '287 Patent | Cite Checking a Legal Brief |
|---|---|
| 1. A method for accessing an item of interest within a particular one of a plurality of stored representations of data, the method comprising the steps of: | Accessing a case citation ("item of interest") from within a case ("particular one of a . . . stored representation of data") in a law library ("plurality of stored representations of data"). |
| searching a plurality of stored annotations corresponding to different items within the plurality of stored representations of data | Reviewing a brief containing statements ("stored annotations") with citations ("corresponding to items") to legal opinions stored within the law library ("within the plurality of stored representations of data"). |
| to locate an annotation of interest corresponding to the item of interest, | Identifying an interesting sentence ("annotation") with a citation ("item"). |

| | |
|---|---|
| the annotation of interest having an associated data identifier and an associated location identifier,<br><br>the associated data identifier corresponding to the particular one of the plurality of stored representations of data, the associated location identifier corresponding to a location of interest within the particular one of the plurality of stored representations of data; | The sentence ("annotation") has a citation with a case name and reporter citation ("data identifier") and a pincite ("location identifier") |
| [B] searching a plurality of stored data identifiers associated with the plurality of stored annotations to locate the associated data identifier and an associated address identifier, the associated address identifier corresponding to an address of the particular one of the plurality of stored representations of data within the plurality of stored representations of data; and | Searching the law library index ("plurality of stored data identifiers") to locate the reporter on the shelf ("address identifier") |

| [C] accessing the item of interest at the location of interest using the associated address identifier and the associated location identifier. | Retrieving the volume of the reporter containing the case, turning to the relevant opinion ("address identifier"), and then locating the pincited page ("location identifier"). |
|---|---|

The claims of the '189 Patent are similarly abstract '287 Patent.  Indeed, those claims differ in only two ways (1) the omission of an index lookup, and (2) that the media must be a "media stream."  But as discussed above, confining an idea to a particular conventional technological environment does not save the claims from invalidity.  *Alice*, 573 U.S. at 221–25; *see Affinity Labs of Tex.*, 838 F.3d at 1267–69, 1272 (invalidating claims on "streaming user-selected content" as abstract).  Thus, the '187 Patent is likewise directed to an abstract idea.

In a transparent effort to avoid this Section 101 challenge, Eureka alleges that the '287 Patent uses "computer-specific technology" such as "annotations, data identifiers, [and] locations of interest," (Compl., ¶ 18), and that the claims are directed to "helping organizations solve the problem of allowing multimedia content to be easily stored on, and retrieved from, relatively inexpensive digital storage devices."  *Id.* However, none of the terms "annotation," "identifier," or "location of interest" require any computer technology at all.  Further, the claims provide no improvement in the storage or retrieval of media not present in an ordinary paper and analog library. Indeed, the "retrieval" limitations merely assert that the data is retrieved, and provide no detail as to how that data is retrieved.  *See Apple*, 842 F.3d at 1241.

14

### 2. The '189 and '287 Patents Fail Step 2 of *Alice* as They Fail to Recite Anything More than an Abstract Idea.

Under the second step of *Alice*, the Court considers whether the elements of each claim, either individually or "as an ordered combination," include an "inventive concept" such that "'the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217–18 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72–73, 79–80 (2012)). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Alice*, 573 U.S. at 221 (alterations in original) (quoting *Mayo*, 566 U.S. at 77). "Those 'additional features' must be more than 'well-understood, routine, conventional activity.'" *Ultramercial*, 772 F.3d at 715 (quoting *Mayo*, 566 U.S. at 77, 79). As the "Supreme Court and the Federal Circuit have made perfectly clear, merely implementing an abstract idea on conventional computer technology is not enough." *IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151-JD, 2015 WL 4192092, at *4 (N.D. Cal. July 10, 2015), *aff'd*, 667 F. App'x 773 (Fed. Cir. 2016); *see also In re TLI Commc'ns LLC*, 823 F.3d at 613 (same and clarifying that "telephone unit," "server," "image analysis unit," and "control unit" limitations were insufficient to satisfy *Alice* step two). Courts routinely find that claims lack an inventive concept where they "require only off-the-shelf, conventional computer technology," for performing basic computer functions. *Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 F. App'x. 950, 954-55 (Fed. Cir. 2017).

Similarly, representative Claim 1 of the '287 Patent does not recite *any* computer components of any kind. Terms such as "query," "media," "annotation," "value," or

"stream," and "stored" all were well-understood terms in the pre-computer era, and do not necessarily relate to any computer component at all.  Nothing in the claims, to the extent they require computers *at all,* requires anything more than that which "can be achieved by any general purpose computer without special processing."  *See, e.g.*, *Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 564 (D. Del. 2014) (quoting *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011)), *aff'd sub nom. Cloud Satchel, LLC v. Barnes & Noble, Inc.*, 626 F. App'x. 1010 (Fed. Cir. 2015).

### C.   The '144 Patent Is Directed to the Abstract Idea of Writing Research Notes, Which Is Ineligible Subject Matter under *Alice*'s Two-Step Test.

The '144 Patent is invalid for substantially the same reasons.  While the '189 Patent and '287 Patent are directed to the abstract idea of reviewing notes, the '144 Patent is directed to the abstract idea of creating the notes in the first place.  This idea is no less abstract, rendering the claims of the '144 Patent invalid as ineligible subject matter.

### 1.   The '144 Patent Merely Adds a Single Limitation to the Claims of the '189 and '287 Patents, Which Is also an Abstract Idea under Alice Step 1.

The '144 Patent adds a single limitation to the abstract claims of the '189 and '287 Patents, but this limitation is still abstract.  Representative claim 1 of the '144 Patent recites:

1. A method for annotating media, comprising the steps of:

[A] identifying one or more particular times within a period

defined by a start time and an end time of a media stream at

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF AVID TECHNOLOGY, INC'S
MOTION TO DISMISS

CASE NO. 2:19-CV-07583-PSG-PJW

which content within the media stream corresponds to an annotation value;

[B] associating the annotation value with the identified one or more particular times; and

[C] identifying a probability representing a measure of confidence in an accuracy of the annotation value corresponding to the identified one or more particular times.

Limitations A and B recite annotations that are substantially identical to those described in representative Claim 1 of the '287 Patent. The '144 Patent merely adds Limitation C, which recites "identifying a probability representing a measure of confidence in the accuracy of the annotation value." However, this limitation does not save the claims because the specification provides *no disclosure at all* as to how such a probability is to be identified by a computer. It is merely an idea abstracted away from any tangible implementation.

The '144 Patent also makes clear that this feature can be performed manually by a human. Claim 14 claims "wherein the identifying is performed by one of an automatic and *a manual process*." The Specification of the '144 Patent describes this feature in exactly one location—the summary of the invention—which states: "The processor also computes the probabilities *or receives the probability as input from the human annotator*." '144 Patent col. 2 ll. 50–52. That is, a human can generate such a probability, but the specification is *entirely silent* as to *how* a processor would independently calculate such a probability. *Apple*, 842 F.3d at 1241 (claims that

"merely claim the resulting systems" or "are directed to certain functionality" are invalid).

> 2. *The Single Additional Limitation of the '144 Patent Fails Step 2 of* Alice *because Eureka Admits It Can Be Performed by a Human, and Therefore It Does Not Improve Computer Technology.*

Indeed, nothing in the claims or the specification suggests the "something more" that is needed to save the '144 Patent from ineligibility.  Limitation C and the specification's description of this feature is a quintessential example of a patent-ineligible claim that recites a conventional application (manually marking media with annotations), and then claims to do so on a computer.  *Alice*, 573 U.S. at 222 ("simply implementing [an abstract idea] on a physical machine, namely a computer, is not a patentable application of that principle") (citation omitted).  Further, because the specification provides *no guidance* as to how to actually perform Limitation C, it amounts to an unpatentable claim on a result, not how to accomplish that result.  *Apple*, 842 F.3d at 1241 (finding patent-ineligible inventions on computer menus without "claim[ing] a particular way of programming or designing the software to create menus that have these features.").

> 3. *Eureka's Attempt to Bolster the '144 Patent with Manifestly Incorrect Allegations in the Complaint Does Not Save the '144 Patent from Invalidity.*

In an attempt to save the validity of the '144 Patent, Eureka has padded its complaint with at least four superfluous and manifestly incorrect allegations regarding the '144 Patent, its claims, and its disclosure.  The Court need not consider these incorrect allegations in considering this motion.  *Seven Arts Filmed Entm't Ltd v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013) (in considering 12(b)(6)

motions, courts are not required to accept as true "allegations that contradict exhibits attached to the Complaint").

First, Eureka alleges that Claim 1 describes "methods for annotating media . . . based upon a probabilistic calculation," or "identifying start and end times within a media stream based upon probabilistic modeling of annotations." (Compl., ¶¶ 53, 61.) Ignoring the clear claim language and their own specification, Eureka attempts to amplify the word "probability" to persuade the Court that the '144 Patent claims an automatic method for a computer to annotate multimedia. But this is not so. Claim 1 does not require or contemplate any "probabilistic calculation," and in fact can cover hand-annotating media with probabilities assigned by humans. *See* '144 Patent col. 24 ll. 34–36. Further, the claim makes clear that a "probability" is assigned to an "annotation," but does not suggest that a probability is used *to produce* the annotation.

Second, Eureka alleges that the '144 Patent focuses on an "Annotation Table" which allegedly has several non-abstract features. (Compl., ¶¶ 53–57.) But the Annotation Table does not appear by name, nor is it required by Claim 1, which is satisfied even by a single annotation ("**one** or more particular times"). '144 Patent col. 23 ll. 30–40.

Third, Eureka alleges that the '144 Patent is "limited to specific solutions for data media streaming technology," but the claims fail to recite any media or content streaming *at all*. (Compl., ¶ 63.) Despite this conclusory statement, this claim is not directed to content delivery but merely to the abstract idea of writing research notes. *See* '144 Patent col. 23 ll. 30–40 ("A method for annotating . . . .").

Fourth, Eureka alleges that the '144 Patent claims a search methodology, including "receiving a query and searching . . . annotation values." (Compl., ¶ 59.) Eureka relies on this alleged feature to claim that the '144 Patent "do not preclude matching the query to the media as a whole, or other methods of searching for data." (*Id.* ¶ 65.) But *not a single one* of the claims of the '144 Patent describes receiving a query, calculating matches, or, in fact, *using any search technology at all*. *See* '144 Patent cols. 23–26.

To the extent that Eureka relies upon these allegations in arguing for the validity of the '144 Patent, Avid respectfully submits that those arguments should be disregarded. *See Seven Arts*, 733 F.3d at 1254.

## II.   ALL THREE COUNTS SHOULD BE DISMISSED AS EUREKA'S DEFICIENT COMPLAINT FAILS THE PLEADING REQUIREMENTS SET FORTH IN *TWOMBLY* & *IQBAL*

Eureka's Complaint fails to allege facts showing that Eureka is plausibly entitled to relief for its patent infringement claims, and accordingly, should be dismissed. A party is required "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim for patent infringement is only plausible if the plaintiff alleges that a product or service offered by the defendant meets each and every element of at least one claim. *See, e.g.*, *Apollo Fin., LLC v. Cisco Sys.*, Inc., 190 F. Supp. 3d 939, 943 (C.D. Cal. 2016).[4] ("Plaintiff does not state a plausible claim for patent infringement

---

[4] *See also Yi-Ping Lin v. Transform Partners LLC*, No. 18-cv-1933-DMS (KSC), 2019 WL 446403, at *1–*2 (S.D. Cal. Feb. 5, 2019) (dismissing infringement claim because the complaint did not plead facts to show how each and every limitation of at least one of the asserted claims was met by the accused product); *MACOM Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, No. 2:16-cv-02859-CAS (PLAX), 2017 WL 3449596, at *5–*6 (C.D. Cal. June 5, 2017) (dismissing defendant's infringement counterclaim because the patentee had failed to plead any facts to show how there was infringement, (Footnote Cont'd on Following Page)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF AVID TECHNOLOGY, INC'S
MOTION TO DISMISS

CASE NO. 2:19-CV-07583-PSG-PJW

by simply identifying the allegedly infringing products and reciting the elements of a patent infringement claim in a conclusory fashion, absent any factual support.").

Here, Eureka fails to allege that any Avid product or service meets each and every limitation of any claim of any Asserted Patent. For the '189 Patent, Eureka only alleges that Avid's Accused Products provide "a method for matching a query to a portion of media," as recited in the preamble of Claim 1, and that they "receive a query relating to media of interest." (Compl., ¶¶ 122–23), but does not allege that any of Avid's Accused Products search a plurality of annotation values, identify a start time of a media stream, or provide the stream in response to a query, all of which are required by Claim 1. For the '287 Patent, Eureka fails to allege that any of Avid's products "access[es] the item of interest at the location of interest using the associated address identifier and the associated location identifier," as required by Claim 1 of the '287 Patent. (*Id.* ¶¶ 133–35.) Eureka's claim of infringement of the '144 Patent is far more bizarre. Eureka fails to allege that Avid practices *any limitation* of Claim 1 of the '144 Patent. (*See id.* ¶¶ 145–47.)

Because Eureka has failed to allege that any Avid product practices all the limitations of even a single claim of any of the Asserted Patents, Eureka's claims should be dismissed.

---

but merely identified an accused product and stated in a conclusory fashion that the accused product met the claims of the asserted patent); *TeleSign Corp. v. Twilio, Inc.*, No. CV 16-2106 PSG (SSx), 2016 WL 4703873, *3–*4 (C.D. Cal. Aug. 3, 2016) (dismissing claim because the patentee did not "plausibly allege that a defendant's product or products practice all elements of at least one patent claim"); *Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC (ANx), 2012 WL 1835680, at *4 (C.D. Cal. May 16, 2012) ("Applying *Iqbal* and *Twombly*, it is clear that Plaintiff's allegations are too conclusory when they merely allege that each Defendant is directly infringing 'by making, using, selling, offering to sell, or importing' technology that infringes Plaintiff's method patent.")

## <u>CONCLUSION</u>

For the foregoing reasons, Avid respectfully submits that the Court should rule that each of the '189 Patent, '287 Patent, and '144 Patent are invalid for failing to claim patentable subject matter, and dismiss Eureka's complaint with prejudice for failing to state a claim.

DATED:  October 23, 2019

By: */s/ Bruce L. Ishimatsu*
Bruce L. Ishimatsu

Hilary L. Preston, (*Pro Hac Vice pending*)
  hpreston@velaw.com
VINSON & ELKINS L.L.P.
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone: (212) 237-0129
Facsimile:  (917) 849-5342

Parker D. Hancock, (*Pro Hac Vice to be Requested*)
phancock@velaw.com
VINSON & ELKINS L.L.P.
1001 Fannin St., Suite 2600
Houston, Texas 77002
Telephone: (713) 758-2153
Facsimile:  (713) 615-5140

Matthew J. Melancon, (*Pro Hac Vice to be Requested*)
mmelancon@velaw.com
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Telephone: (512) 542-8470
Facsimile:  (512) 542-8612

Bruce L. Ishimatsu (CSBN 86145)
  bruce@ishimatsulaw.com
ISHIMATSU LAW GROUP P.C.
4712 Admiralty Way, No. 1012
Marina Del Rey, CA 90292
Telephone: (310) 200-4060
Facsimile: (310) 496-1540

Attorneys for Defendant
AVID TECHNOLOGY, INC.

## __CERTIFICATE OF SERVICE__

I hereby certify that on October 23, 2019, the document above was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case

*/s/ Bruce L. Ishimatsu*_____

Bruce L. Ishimatsu

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF AVID TECHNOLOGY, INC'S
MOTION TO DISMISS

CASE NO. 2:19-CV-07583-PSG-PJW