STEPHEN M. LOBBIN
California Bar No. 181195
sml@smlavvocati.com
SML AVVOCATI P.C.
969 Hilgard Avenue, Suite 1012
Los Angeles, CA 90024
Telephone: 949.636.1391

CABRACH J. CONNOR
Texas Bar No. 24036390 (*admitted pro hac vice*)
cab@connorkudlaclee.com
JENNIFER TATUM LEE
Texas Bar No. 24046950 (*admitted pro hac vice*)
jennifer@connorkudlaclee.com
609 Castle Ridge Road, Suite 450
Austin, TX 78746
Telephone:  512.777.1254
Facsimile:  888.387.1134

Attorneys for Plaintiff
EUREKA DATABASE SOLUTIONS, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUREKA DATABASE SOLUTIONS, LLC,<br><br>            Plaintiff,<br><br>vs.<br><br>AVID TECHNOLOGY, INC.<br><br>            Defendant. | NO. 2:19-CV-7583-PSG-PJW<br><br>**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Eureka Database Solutions, LLC ("Eureka") files this First Amended Complaint for Patent Infringement against Avid Technology, Inc. ("Avid") for infringement of U.S. Patent Nos. 6,173,287, 6,311,189, and 6,332,144 (collectively "the Asserted Patents").

## PARTIES

1.      Eureka Database Solutions, LLC ("EDS") is a Texas limited liability

company with its headquarters and principal place of business at 1400 Preston Road, Suite 475, Plano, Texas 75093.

2.  Avid is a Delaware corporation with a principal place of business at 65-75 Network Drive, Burlington, MA 01803.  Avid may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. Avid has appeared.

3.  Avid offers infringing products and services for sale and use throughout the United States, including in the Central District of California.  Avid has advertised its infringing products and services throughout the Central District of California and financially benefited from conducting business in California.

4.  Upon information and belief, Avid offers products and services that have been and are widely used in this judicial district and throughout the United States, including Media Composer|Phrase Find, Media Composer|ScriptSync, and Dialogue Search that provide, among other things, multimedia search, filtering, and indexing capabilities to users.

**JURISDICTION AND VENUE**

5.  Eureka brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.  Avid is subject to general and specific personal jurisdiction of this Court based upon its regularly conducted business in California and in this judicial district

giving rise to this action. Avid has established minimum contacts with this forum such that the exercise of jurisdiction over Avid comports with traditional notions of fair play and substantial justice. Avid directly and through subsidiaries and intermediaries (including distributors, retailers, and others) has committed acts of infringement in this District by making, using, testing, selling, importing into the United States, and/or offering for sale products that infringe the Asserted Patents.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1400(b) and 28 U.S.C. § 1391.

8.     Avid has committed acts of infringement in the Central District of California and maintains a regular and established place of business in the district located at 101 South First Street, Suite 200, Burbank California 91502.

## THE EUREKA PATENTS

9.     Avid has infringed U.S. Patent Nos. 6,173,287, 6,311,189, and 6,332,144.

10.     The '189, '287, and '144 Patents relate to methods, apparatuses, and systems for annotating media, accessing an item of interest within a stored representation of data, ranking multimedia annotations of interest, and matching a query to a portion of media.

11.     EDS is the assignee of all right, title, and interest in and to the '287 Patent, titled "Technique for Ranking Multimedia Annotations of Interest" (attached as Exhibit A).

12.     EDS is the assignee of all right, title, and interest in and to the '189 Patent,

titled "Technique for Matching a Query to a Portion of Media" (attached as Exhibit B).

13.     EDS is the assignee of all right, title and interest in and to the '144 Patent, titled "Technique for Annotating Media" (attached as Exhibit C).

14.     EDS has the exclusive right to assert all causes of action arising under the Asserted Patents and the right to remedies for infringement thereof.

15.     The original assignee of the '189 Patent, Altavista Company, was one of the most popular search engines in the late 1990s.  It was created by research scientists at Digital Equipment Corporation (the original assignee of the '287 and '144 Patents) and was the 11th most visited website in 1998.  Yahoo purchased Altavista in 2003.

**The Asserted Patents**

16.     On January 9, 2001, the United States Patent and Trademark Office issued the '287 Patent for inventions covering, in one claimed embodiment, a method for accessing an item of interest within a particular one of a plurality of stored representations of data, the method comprising: a) searching a plurality of stored annotations corresponding to different items within the plurality of stored representations of data to locate an annotation of interest corresponding to the item of interest, the annotation of interest having an associated data identifier and an associated location identifier, the associated data identifier corresponding to the particular one of the plurality of stored representations of data, the associated location identifier corresponding to a location of interest within the particular one of the plurality of

stored representations of data; b) searching a plurality of stored data identifiers associated with the plurality of stored annotations to locate the associated data identifier and an associated address identifier, the associated address identifier corresponding to an address of the particular one of the plurality of stored representations of data within the plurality of stored representations of data; and c) accessing the item of interest at the location of interest using the associated address identifier and the associated location identifier.

17.   The technologies recited in the claims of the '287 Patent claim inventive concepts and do not claim an abstract idea.  The inventive concepts are directed to a technical solution to solve a problem unique to data storage technology by greatly enhancing and facilitating the operation of data storage and retrieval technology.

18.   For example, embodiments of the claimed invention recite a method for accessing an item of interest within stored representations of data by using annotations, data identifiers, locations of interest and other computer-specific technology.  The inventions are directed to helping organizations solve the problem of allowing multimedia content to be easily stored on, and retrieved from, relatively inexpensive digital storage devices.  '287 Patent, col. 1, lines 16-17.

19.   Independent claim 1 is not representative of the claims of the '287 patent. The dependent claims add meaningful limitations that further demonstrate that those claims are not directed to an abstract idea and reflect inventive concepts.  The dependent claims recite, for example, accessing one of a plurality of items within a

particular content stream without first accessing another item of interest. By providing this novel functionality, the inventions enable targeted access by a user that does not require cycling through query results to locate a particular item of interest resulting in an improved system that delivers more expedient and efficient querying and retrieval. Such detail precludes characterizing the claims as covering abstract ideas, laws of nature, or natural phenomenon. These details also demonstrate inventive aspects of the disclosed embodiments that are not reflected in independent claim 1.

20. Another dependent claim example is storing the associated data identifier corresponding to an address of the particular stored content within the plurality of stored data identifiers, resulting in an improved data structure that delivers more expedient and efficient querying and retrieval. Such detail precludes characterizing the claims as covering abstract ideas, laws of nature, or natural phenomenon. These details also demonstrate inventive aspects of the disclosed embodiments that are not reflected in independent claim 1.

21. The technology claimed in the '287 Patent presented new and unique advantages over the state of the art at the time. Although the inventions taught in the claims of the '287 Patent have by today been widely adopted by leading businesses, at the time of the invention, the technologies were innovative. At that time, organizations had little or no means of searching within multimedia content, organizing information about multimedia content, and delivering multimedia content in a ubiquitous manner. See '287 Patent, col. 1, lines 11-64.

22.    In the Background of the Invention section of the specification, the inventors described the state of the art: large amounts of analog multimedia data that was being digitized to enable more efficient and cost-effective storage and retrieval. Digital content provides the ability to store, search, browse, and retrieve multimedia content that may exist in distributed datastores.

23.    A problem the inventors recognized and solved by their inventions was that multimedia content owners had little or no means of searching the content, organizing information about multimedia content, and delivering multimedia content. More specifically, there was little or no "means for searching inside streams of multimedia content (e.g., audio/video streams), adding meta-information to multimedia content (i.e., annotating multimedia content) for purposes of indexing within multimedia content, and providing universal access to indexed multimedia content over a variety of connection speeds and on a variety of client platforms."

24.    The growing volume of digitized multimedia content at the time of the inventions gave rise to a need for an efficient system and technique for augmenting digital content with metadata associated with portions of content that could be stored in association with the content, searched to locate portions of content of interest, and enable efficient retrieval, and delivery of relevant portions without the need for retrieving and delivering entire content streams that would then be searched for the particular portion of interest.

25.    The asserted claims of the '287 Patent are not directed to a method of

organizing human activity, a fundamental economic practice long prevalent in our system of commerce, or a building block of the modern economy. Instead, they are limited to specific solutions for data storage technology.

26. More particularly, with reference to the '287 Patent specification, at the time of the inventions claimed in the '287 Patent (circa 1998), organizations desired to migrate analog multimedia content to digital form. This process provided the ability to store, search, browse, and retrieve digitized multimedia content from distributed sites. An organization having a number of distributed offices could store, search, browse, and retrieve digitized multimedia content from a centralized storage facility over a local area network or public computer network such as the world-wide web. '287 Patent at 1:19-29.

27. A technological context of the '287 Patent is an organization wanting to provide other entities located outside the organization with the ability to access, search, browse, and retrieve digitized multimedia content stored and maintained within the organization. '287 Patent at 1:41-52.

28. For example, the '287 Patent specification describes the claimed subject matter providing such organizations (or third-party entities accessing the multimedia data) the ability to search within stored multimedia content by creating a new and useful data structure adding meta-information to multimedia content (i.e., annotating multimedia content) to index the multimedia content and enable searching, browsing, retrieval, and access of distributed multimedia content without having to undertake the

time-consuming and inefficient process of locating items of interest (e.g., spoken phrases or visual scenes) within an audio or video stream.

29.    The '287 Patent specification details network schematics of embodiments in Figures 1A and 1B along with a detailed description of the novel processes carried out within them to generate the inventive data structures that provide the benefits of the inventions.

30.    Figure 1A is accompanied by a description of the claimed processes carried out in the system.  See '287 4:66-11:7.



FIG. 1A

31.    The process claimed in the '287 Patent creates data structures that were novel and useful at the time of their invention.

32.     Figure 5 shows a file structure for a file that is stored in a media database (22 in Figure 1A above) containing a digital representation of audio/video data in accordance with the inventions claimed in the '287 Patent.  '287 at 4:14-16.



FIG. 5

33.     At the time of the inventions claimed in the Asserted Patents, a system having a user interface showing media/metadata relationships that enabled a user to

navigate stored multimedia content based upon such media/metadata relationships to identify clips in a media stream was novel and useful.

34. Avid's own U.S. Patent No. 7,512,885 (filed March 31, 2003) acknowledges that such technology as is claimed in the Asserted Patents is useful for many purposes including navigating relationships between metadata and multimedia content.

(12) **United States Patent**
Walsh et al.

(10) **Patent No.:** **US 7,512,885 B2**
(45) **Date of Patent:** **Mar. 31, 2009**

(54) **GRAPHICAL USER INTERFACE FOR NAVIGATING AND DISPLAYING RELATIONSHIPS AMONG MEDIA DATA AND METADATA**

(75) Inventors: **Patrick Walsh**, Laval (CA); **Louis Ayotte**, Montreal (CA); **Steve McNeill**, St. Lazare (CA)

(73) Assignee: **Avid Technology, Inc.**, Tewksbury, MA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 645 days.

(21) Appl. No.: **10/403,764**

(22) Filed: **Mar. 31, 2003**

(65) **Prior Publication Data**
US 2004/0189704 A1      Sep. 30, 2004

| | | |
|---|---|---|
| 6,477,537 B2 * | 11/2002 | Gustman ................... 707/102 |
| 6,636,250 B1 * | 10/2003 | Gasser ....................... 715/853 |
| 6,654,031 B1 * | 11/2003 | Ito et al. ................... 715/723 |
| 6,735,762 B2 * | 5/2004 | Fujikawa et al. ........... 717/141 |
| 6,829,615 B2 * | 12/2004 | Schirmer et al. ........... 707/102 |
| 7,073,127 B2 * | 7/2006 | Zhao et al. ................. 715/719 |
| 2002/0112180 A1 * | 8/2002 | Land et al. ................. 713/200 |
| 2003/0131007 A1 * | 7/2003 | Schirmer et al. ........... 707/100 |
| 2004/0039934 A1 * | 2/2004 | Land et al. ................. 713/200 |
| 2004/0061702 A1 * | 4/2004 | Kincaid ..................... 345/440 |
| 2004/0085357 A1 * | 5/2004 | Childress et al. ........... 345/762 |

* cited by examiner

Primary Examiner—Tadesse Hailu
Assistant Examiner—Anita D Chaudhuri
(74) Attorney, Agent, or Firm—Peter J. Gordon; Oliver Strimpel

(57) **ABSTRACT**

An editing system has a graphical user interface that shows media/metadata and metadata/metadata relationships and allows a user to navigate a graph defined by these relation-

35. The technology claimed in the '287 Patent does not preempt all ways for accessing items within a stored representation of data. For example, the claims do not preclude identifying the location of a stored document or other methods of searching for data that do not use stored annotations, metadata tables, or the novel data structures claimed in the '287 Patent.

36. The '287 Patent claims cannot be practiced by a human alone and there

exists no human analogue to the methods claimed in the '287 Patent. The claims are specifically directed to data storage, annotation, retrieval, and indexing technology and recite components such as annotations, data identifiers, locations of interest and other computer-specific technology that exist in the context of computer-based systems and cannot be practiced by a human alone.

37. The particular combination of claim elements recited in the claims of the '287 Patent was not well-understood, routine, or conventional to a skilled artisan in the relevant field at the time of the inventions.

38. The claimed subject matter of the '287 Patent describes novel techniques and methods for transforming digital multimedia content by storing annotations associated with content, searching stored annotations to locate a desired portion of content, and providing access to portions of multimedia content without the need for burdensome and time-consuming review of large multimedia streams to find particular portions of interest.

39. The specifications of the Asserted Patents describe data elements for use in practicing the inventions that one of skill in the art at the time of the inventions (circa 1998) would recognize as not being generic.

40. An "Object Table" is a data element in a meta database that lists all multimedia objects. An Object Table comprises, in an exemplary embodiment, an assigned object identification number, which typically is a unique numeric or alphanumeric value, and object type (e.g., audio or video).

41.    Figure 8 exemplifies the structure and content of an Object Table:



FIG. 8

42.    A "Representation Table" stores representations, each assigned a unique identification number, corresponding to objects.

43.    The Representation, Annotation, and Object tables disclosed and claimed in the '287 Patent were not abstract concepts.  The '287 Patent is directed to more than simply reviewing research notes on content.

44.    Figure 9 exemplifies the structure and content of a Representation Table:

| REPRESENTATION TABLE | | | |
|---|---|---|---|
| REPRESENTATION ID. | OBJECT ID. | REPRESENTATION TYPE | URL |
| 00001000 | 00000001 | VIDEO/MPEG | http://www.digital.com/video.mpg |
| 00001001 | 00000001 | AUDIO/X-REALAUDIO | http://www.digital.com/audio.xra |

FIG. 9

45.    An "Annotation Table" lists annotations in the object database.  Examples of annotations include transcript, speaker, or keyframe.  Annotations generated for an object that represents an audio/video stream, for example, have a corresponding start and end time.

46.    The claimed stored annotations, annotation table, and related data structures were novel and unique at the time of the invention and were not considered routine, conventional or well-understood by those of skill in the art.

> Each of the annotations in the object database of the meta database **26** are also assigned an annotation type **154**. The annotation type **154** can be, for example, transcript, speaker, or keyframe. Each annotation type **154** corresponds to the type of annotation that has been generated for a corresponding object in the object database of the meta database **26**. Accordingly, each of the annotations in the object database of the meta database **26** are listed in the annotation table **150** with a corresponding annotation type **154**.

'287 at 17:17-25.

47.    Figure 10 exemplifies the structure and content of an Annotation Table:



FIG. 10

48.    The novel metadata structures and elements claimed in the '287 Patent were not generic database components well known to or understood by those of ordinary skill in the art at the time of the inventions.

49.    The novel techniques for performing operations on the metadata structures and operations claimed in the '287 Patent were not generic database components well known to or understood by those of ordinary skill in the art at the time of the inventions.

50.    The claimed subject matter of the '287 Patent describes systems and methods for transforming multimedia content into searchable, retrievable, and efficiently stored (enabling distributed storage and access) datastores associated in a novel manner to enable operations that could not be performed on analog or digital

1

multimedia content at the time of the inventions.

2

51.    On October 30, 2001, the United States Patent and Trademark Office

3

4

issued the '189 Patent.  One claimed embodiment recites a method for matching a

5

query to a portion of media, comprising: a) receiving a query relating to media of

6

interest; b) searching, based upon the query, a plurality of annotation values to identify

7

8

an annotation value within the plurality of annotation values which matches the query,

9

each of the plurality of annotation values corresponding to a respective portion of a

10

respective item of available media; c) identifying a start time of a media stream

11

12

forming a first portion of a first item of available media corresponding to the identified

13

annotation value; and d) providing the identified media stream start time in response

14

to the query.

15

52.    The '189 Patent focuses on the structure, function, and operation of the

16

17

Annotation Table and claims systems and methods for using it to query, identify, and

18

provide access to multimedia content.

19

53.    The Annotation Table (see Figure 10) stores metadata associated with

20

21

multimedia content.

22

54.    An Annotation Table was not a generic component in multimedia storage

23

24

and streaming systems at the time of the inventions circa 1998 and generating and

25

using an Annotation Table was not a well-understood methodology for performing

26

operations on stored multimedia content.

27

28

55.    The claimed subject matter of the '189 Patent provided an inventive

augmentation to stored multimedia content by providing a searchable Annotation Table used to locate start times or other indicia of portions of multimedia content of interest.

56.     More particularly, with reference to the '189 Patent specification, at the time of the inventions claimed in the '189 Patent (circa 1998), organizations desired to migrate analog multimedia content to digital form.  This process provided the ability to store, search, browse, and retrieve digitized multimedia content from distributed sites.  An organization having a number of distributed offices could store, search, browse, and retrieve digitized multimedia content from a centralized storage facility over a local area network or public computer network such as the world-wide web. '189 Patent at 1:19-29.

57.     A technological context of the '189 Patent is an organization wanting to provide other entities located outside the organization with the ability to access, search, browse, and retrieve digitized multimedia content stored and maintained within the organization.  '189 Patent at 1:43-54.

58.     For example, the '189 Patent specification describes the claimed subject matter providing such organizations (or third-party entities accessing the multimedia data) the ability to search within stored multimedia content by creating a new and useful data structure adding meta-information to multimedia content (i.e., annotating multimedia content) to index the multimedia content and enable searching, browsing, retrieval, and access of distributed multimedia content without having to undertake the

time-consuming and inefficient process of locating items of interest (e.g., spoken phrases or visual scenes) within an audio or video stream.

59. The '189 Patent specification details network schematics of embodiments in Figures 1A and 1B along with a detailed description of the novel processes carried out within them to generate the inventive data structures that provide the benefits of the inventions.

60. Figure 1B is accompanied by a description of the claimed processes carried out in the system. See, e.g., '189 at 4:20-9:17.



FIG. 1B

61. Utilizing the system illustrated in Figure 1B, multimedia content is processed into digital representations consisting of three components: an audio layer,

a video layer, and a system layer.

62.     The specification describes the utility of this process and resulting data structures:

> In view of the above, it is now appropriate to indicate that the media database server **24** stores the first digital representation **48** of the raw audio/video data **12** in the media database **22** such that each P-frame in the primary bit stream **44** for the first digital representation of the raw audio/video data **12** references a corresponding I-frame in the secondary bit stream **46** for the first digital representation of the raw audio/video data **12**, and vice versa. Thus, the user **11** can browse and/or retrieve a desired portion of the first digital representation **48** starting at any arbitrary location within the first digital representation **48** by first obtaining an I-frame from the secondary bit stream **46** for the first digital representation of the raw audio/video data **12** which corresponds to the arbitrary starting location of the desired portion, and then obtaining P-frames from the primary bit stream **44** for the first digital representation of the raw audio/video data **12** for all subsequent locations of the desired portion. This is beneficial in that the media database server **24** will only have to send a message containing a single I-frame in order for the user **11** to browse and/or retrieve a desired portion of the first digital representation **48**, thereby obtaining maximum network transmission efficiency while maintaining the encoding advantages of only a single I-frame in the primary bit stream **44** for the first digital representation of the raw audio/video data **12**.

'189 at 13:10-34.

63.     The process claimed in the '189 Patent creates data structures that were novel and useful at the time of their invention.

64.     The system and methods claimed in the '189 Patent represent novel uses and applications of these data structures for identifying start time markers in multimedia streams based upon stored metadata values.

65.     Figure 5 shows a file structure for a file that is stored in a media database

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(22 in Figure 1B above) containing a digital representation of audio/video data in accordance with the inventions claimed in the '189 Patent.  '189 at 13:60-14:56.



FIG. 5

66.    At the time of the inventions claimed in the Asserted Patents, a system having a user interface showing media/metadata relationships that enabled a user to navigate stored multimedia content based upon such media/metadata relationships to

identify clips in a media stream was novel and useful.

67.    Avid's own U.S. Patent No. 7,512,885 (filed March 31, 2003) acknowledges that such technology as is claimed in the Asserted Patents is useful for many purposes including navigating relationships between metadata and multimedia content.

68.    The technologies recited in the claims of the '189 Patent provide inventive concepts and do not claim an abstract idea.  The inventive concepts are directed to a technical solution to solve a problem unique to media streaming technology, by greatly enhancing and facilitating the searching, identifying portions of, and providing access to multimedia data streams.

69.    For example, embodiments of the claimed invention recite a method for matching a query to a portion of media using queries and other computer-specific technology.  The inventions are directed to helping organizations solve the problem of allowing multimedia content to be easily stored on and retrieved from relatively inexpensive digital storage devices.  See '189 Patent, col. 1, lines 13-21.

70.    The '189 Patent provides a technique for matching a query to a slice of media.

71.    The technology claimed in the '189 Patent presented new and unique advantages over the state of the art at the time.  Although the inventions taught in the claims of the '189 Patent have by today been widely adopted by leading businesses, at the time of the invention, the technologies were innovative.  At that time, organizations

had little or no means of searching within multimedia content, organizing information about multimedia content and delivering multimedia content in a ubiquitous manner. *See* '189 Patent, col. 1, lines 13-66.

72.    The claims of the '189 Patent are not directed to a method of organizing human activity, a fundamental economic practice long prevalent in our system of commerce, or a building block of the modern economy.  Instead, they are limited to specific solutions for data media streaming technology.

73.    The '189 Patent describes and claims methods and systems utilizing a non-abstract Annotation Table data structure having specific data elements necessary for providing the ability to perform pinpoint search, retrieval, and provision functions on stored multimedia content.

74.    The technology claimed in the '189 Patent does not preempt all ways for matching queries to media.  For example, the claims do not preclude matching the query to the media as a whole, or other methods of searching for data that do not use the novel data structures disclosed and claimed in the '189 Patent.

75.    The '189 Patent claims steps and functionality operate on the novel data structures claimed and described in the patent specification.  Indeed, the specification explicitly states that operation is "directly related to the indexing process and the structure of the index database."  '189 at 17:4-38.

As previously described, the index database server **32** stores the annotations that were generated for the object in the meta database **26** corresponding to the raw audio/video data **12** in the index database **30** along with, or with reference there to, the object identification number associated with the raw audio/video data **12**. The index database server **32** then searches the index database **30** for annotations which match a query initiated by the user **11**, and then obtains the object identification number associated with each matching annotation. The implementation of these steps in accordance with the present invention is directly related to the indexing process and the structure of the index database **30**.

76.    The '189 Patent claims cannot be practiced by a human alone and there exists no human analogue to the methods claimed in the '189 Patent.  The claims are specifically directed to matching a query to a portion of media using queries and other computer-specific technology that exists in the context of computer-based systems and cannot be practiced by a human alone.

77.    The particular combination of claim elements recited in the claims of the '189 Patent (including in particular annotation values in an Annotation Table) was not well-understood, routine, or conventional to a skilled artisan in the relevant field at the time of the inventions.

78.    Independent claim 1 is not representative of the claims of the '189 patent. The dependent claims add meaningful limitations that further demonstrate that those claims are not directed to an abstract idea and reflect inventive concepts.   The dependent claims recite, for example, storing and searching annotation values that include text or phrases within audio or video media.  These limitations meaningfully

limit the independent claim scope to particular applications (e.g., audio or video) and specific annotation field schema.  Such detail precludes characterizing the claims as covering abstract ideas, laws of nature, or natural phenomenon.  These details also demonstrate inventive aspects of the disclosed embodiments that are not reflected in independent claim 1.

79.    On December 18, 2001, the United States Patent and Trademark Office issued the '144 Patent.  One claimed embodiment recites a method for annotating media comprising the steps of: a) identifying one or more particular times within media stream at which content corresponds to an annotation value; b) associating the annotation value with the one or more particular times; and c) identifying a probability representing a measure of confidence in an accuracy of the annotation value.

80.    The '144 Patent focuses on building, storing, and using the Annotation Table and claims systems and methods for annotating media by identifying particular times within a media stream corresponding to an annotation value, which may include a textual item or thing, based upon a probabilistic calculation.

81.    The Annotation Table (see Figure 10) stores metadata associated with multimedia content in a novel data structure.

82.    The Annotation Table may also include associated probability values reflecting a measurement of confidence in the accuracy metadata associated with multimedia content.  Annotation probabilities are represented by Figure 6:





FIG. 6

83.    An Annotation Table including probabilistic metadata was not a generic component in multimedia storage and streaming systems at the time of the inventions circa 1998 and generating and using an Annotation Table featuring probabilistic modeling was not a well-understood methodology for performing operations on stored multimedia content.

84.    The claimed subject matter of the '144 Patent provided an inventive augmentation to stored multimedia content by providing a searchable Annotation Table used to locate start times or other indicia of portions of multimedia content of interest featuring probabilistic values.

85.    More particularly, with reference to the '144 Patent specification, at the time of the inventions claimed in the '144 Patent (circa 1998), organizations desired to migrate analog multimedia content to digital form.  This process provided the ability to store, search, browse, and retrieve digitized multimedia content from distributed

sites.  An organization having a number of distributed offices could store, search, browse, and retrieve digitized multimedia content from a centralized storage facility over a local area network or public computer network such as the world-wide web. '144 Patent at 1:31-53.

86.    A technological context of the '144 Patent is an organization wanting to provide other entities located outside the organization with the ability to access, search, browse, and retrieve digitized multimedia content stored and maintained within the organization.  '144 Patent at 1:42-53.

87.    For example, the '144 Patent specification describes the claimed subject matter providing such organizations (or third-party entities accessing the multimedia data) the ability to search within stored multimedia content by creating a new and useful data structure adding meta-information to multimedia content (i.e., annotating multimedia content) to index the multimedia content and enable searching, browsing, retrieval, and access of distributed multimedia content without having to undertake the time-consuming and inefficient process of locating items of interest (e.g., spoken phrases or visual scenes) within an audio or video stream.

88.    The '144 Patent specification details network schematics of embodiments in Figures 1A and 1B along with a detailed description of the novel processes carried out within them to generate the inventive data structures that provide the benefits of the inventions.

89.    Figure 1B is accompanied by a description of the claimed processes

carried out in the system.  See '144 at 11:62-13:43.



FIG. 1B

90.    Utilizing the system illustrated in Figure 1B, multimedia content is processed into digital representations consisting of three components: an audio layer, a video layer, and a system layer.

91.    The specification describes the utility of this process and resulting data structures:

In view of the above, it is now appropriate to indicate that the media database server **24** stores the first digital representation **48** of the raw audio/video data **12** in the media database **22** such that each P-frame in the primary bit stream **44** for the first digital representation of the raw audio/video data **12** references a corresponding I-frame in the secondary bit stream **46** for the first digital representation of the raw audio/video data **12**, and vice versa. Thus, the user **11** can browse and/or retrieve a desired portion of the first digital representation **48** starting at any arbitrary location within the first digital representation **48** by first obtaining an I-frame from the secondary bit stream **46** for the first digital representation of the raw audio/video data **12** which corresponds to the arbitrary starting location of the desired portion, and then obtaining P-frames from the primary bit stream **44** for the first digital representation of the raw audio/video data **12** for all subsequent locations of the desired portion. This is beneficial in that the media database server **24** will only have to send a message containing a single I-frame in order for the user **11** to browse and/or retrieve a desired portion of the first digital representation **48**, thereby obtaining maximum network transmission efficiency while maintaining the encoding advantages of only a single I-frame in the primary bit stream **44** for the first digital representation of the raw audio/video data **12**.

'144 at 12:62-13:18.

92.    The process claimed in the '144 Patent creates data structures that were novel and useful at the time of their invention.  These data structures enabled an automatic process, such as a daemon process, for associating probabilities with markers in multimedia content corresponding to identified times which were previously associated with a specific annotation value.  See '144 at 2:37-57.

93.    A novel data structure called an annotation index is stored in association with multimedia content to provide a user with an indication of confidence in the

1   correspondence of an item of interest marked in content with the annotation.

2          94.    By improving multimedia storage systems with the addition of a

3
    probabilistic annotation index, query results may be ranked and presented to a user
4

5   with additional metadata based upon the multimedia but not inherently part of it.

6          95.    The probabilistic annotation index claimed in the '144 Patent marks an

7
    improvement to multimedia storage systems that was novel in 1998.
8

9          96.    The system and methods claimed in the '144 Patent represent novel uses

10  and applications of these data structures for identifying and ranking start time markers

11
    in multimedia streams based upon stored metadata values.
12

13         97.    Figure 5 shows a file structure for a file that is stored in a media database

14  (22 in Figure 1B above) containing a digital representation of audio/video data in

15
    accordance with the inventions claimed in the '144 Patent.  '144 at 14:11-53.
16

17

18

19

20

21

22

23

24

25

26

27

28



FIG. 5

98.    At the time of the inventions claimed in the Asserted Patents, a system having a user interface showing media/metadata relationships that enabled a user to navigate stored multimedia content based upon such media/metadata relationships to identify clips in a media stream was novel and useful.

99.    Avid's own U.S. Patent No. 7,512,885 (filed March 31, 2003)

acknowledges that such technology as is claimed in the Asserted Patents is useful for many purposes including navigating relationships between metadata and multimedia content.

100.   The specification explicitly notes that the claimed subject matter "differs from many video annotation systems that work on shot lists." '144 at 14:42-52.

> The annotation structure **110** as described above differs from many video annotation systems that work on shot lists. In this prior art approach, a video is first broken down into thematic chunks called shots that are then grouped into scenes. Each shot is then taken as a basic atomic unit for annotation. That is, each shot is annotated, and searching will only retrieve particular shots. The difficulty of this prior approach is that performing the above processing automatically can be very difficult. The present invention avoids this difficulty by allowing the presence of people and things to be marked within a scene.

101.   The technologies recited in the claims of the '144 Patent provide inventive concepts and do not claim an abstract idea.  The inventive concepts are directed to a technical solution to solve a problem unique to media streaming technology, by greatly enhancing and facilitating the searching, identifying portions of, and providing access to multimedia data streams using a probabilistic model representing a measure of confidence in the accuracy of the annotation value corresponding to a mark or start time in the multimedia stream.

102.   For example, embodiments of the claimed invention recite a method for receiving a query and searching, based upon the query, annotation values corresponding to media to identify and provide a start time within the media stream

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

and other computer-specific technology.

103.   Embodiments of the claimed invention include computer systems configured to store, search, and identify multimedia content based upon annotation values.   The inventions are directed to helping organizations solve the problem of allowing multimedia content to be easily stored on and retrieved from relatively inexpensive digital storage devices.  *See* '144 Patent, col. 1, lines 13-20.

104.   The '144 Patent provides a technique for identifying start and end times within a media stream based upon probabilistic modeling of annotations corresponding to media content.

105.   The technology claimed in the '144 Patent presented new and unique advantages over the state of the art at the time.  Although the inventions taught in the claims of the '144 Patent have by today been widely adopted by leading businesses, at the time of the invention, the technologies were innovative.  At that time, organizations had little or no means of searching within multimedia content, organizing information about multimedia content and delivering multimedia content in a ubiquitous manner. *See* '144 Patent, col. 1, lines 13-66.

106.  The claims of the '144 Patent are not directed to a method of or system for organizing human activity, a fundamental economic practice long prevalent in our system of commerce, or a building block of the modern economy.  Instead, they are limited to specific solutions for data media streaming technology.

107.   Independent claim 1 is not representative of the claims of the '144 patent.

The dependent claims add meaningful limitations that further demonstrate that those claims are not directed to an abstract idea and reflect inventive concepts. The dependent claims recite, for example, defining independently viewable portions of the media stream by start and end time and storing portions of a larger media stream independently to provide more efficient handling of large video or audio assets and distributed storage and delivery. These novel improvements to storage and access systems for multimedia content further improve delivery of content by query and access.

108. In addition to improvements in storage and delivery of multimedia content, the dependent claims recite meaningful limitations to the application of probabilistic modeling data to separate portions of stored multimedia content. This improved granularity yields improved query results and more efficient access to particular items of interest particularly in large or distributed multimedia assets. Granular probabilistic modeling of annotations of interest in multimedia content was novel at the time of the inventions and marked a significant improvement in multimedia storage and delivery systems by providing more accurate query results and shorter access latency.

109. Such detail in the dependent claims precludes characterizing the claims as covering abstract ideas, laws of nature, or natural phenomenon. These details also demonstrate inventive aspects of the disclosed embodiments that are not reflected in independent claim 1.

110.   The '144 Patent describes and claims methods and systems utilizing a non-abstract Annotation Table data structure generated using specific analytical modeling and having specific data elements necessary for providing the ability to perform pinpoint search, retrieval, and provision functions on stored multimedia content.

111.   The technology claimed in the '144 Patent does not preempt all ways for matching queries to media.  For example, the claims do not preclude matching the query to the media as a whole, or other methods of searching for data that do not use all of the claimed steps and elements.

112.   The '144 Patent claims cannot be practiced by a human alone and there exists no human analogue to the methods claimed in the '144 Patent.  The claims are specifically directed to matching a query to a portion of media using queries and other computer-specific technology that exists in the context of computer-based systems and cannot be practiced by a human alone.

113.   The particular combination of claim elements recited in the claims of the '144 Patent (including in particular annotation values and probabilities in an Annotation Table) was not well-understood, routine, or conventional to a skilled artisan in the relevant field at the time of the inventions

**Avid's Products**

114.   Avid makes, has made, uses, tests, sells, offers for sale, distributes, imports into the United States, licenses, and/or supports the Accused Products (Media

Composer|Phrase Find, Media Composer|ScriptSync, and Dialogue Search).



115.   The Avid Accused Products are available from Avid via its website (https://shop.avid.com/ccrz__ProductDetails?viewState=DetailView&cartID=&sku=DYNA12345 ):



116.   The Accused Products are also available through retailers and distributors such as those identified in Avid's video purchasing tutorial available at https://www.youtube.com/watch?v=5lf-rWZxrJI.



117.   Avid publishes webinars on its website describing the functionality of

Media Composer



118.   Avid published the following description of PhraseFind and ScriptSync

in June 2018:

Q: What are Media Composer | PhraseFind Option  and Media Composer | ScriptSync Option?

A: Media Composer | PhraseFind option is a powerful phonetic indexing and search engine that automatically indexes your audio media so that you can search for material based on spoken words.  Media Composer | Scriptsync option automatically phonetically indexes your media and links your clips and takes to your imported script text. For more information on either option, please see the Media Composer | PhraseFind Option or Media Composer | ScriptSync Option pages.

http://avid.force.com/pkb/articles/en_US/FAQ/ScriptSync-and-PhraseFind-Now-Available-for-Media-Composer

119.   Avid Media Composer|PhraseFind quickly finds all relevant clips when a user simply types a word or phrase by analyzing all clips in a "project" and phonetically indexing all audible dialog.

120.   The following description of PhraseFind accurately describes the product:

With the more powerful phonetic indexing engine, PhraseFind can now catalog volumes of dialog-driven media and deliver search results faster than ever before, saving valuable time and money. It also supports shorter phoneme phrases, so you get more accurate results, better indexing of unclear audio, and support for more dialects and accents. And its updated look and feel offers better visual integration with Media Composer.

https://www.avid.com/products/media-composer-phrasefind-option

121.   Avid publishes system requirements for Media Composer users at https://www.avid.com/products/media-composer-phrasefind-option.

122.   Avid first introduced PhraseFind in or around 2011.

123.   Avid promotes PhraseFind on the avidblogs.com website.



124.    Avid promotes the functionality of the Accused Products that embodies the Asserted Patents:

> PhraseFind has more than one major use. While its primary purpose is practical, helping editors find words phonetically, a secondary result is financially based. PhraseFind offers a huge boost in efficiency, which has resulted in a noticeable reduction in edit schedules.  Non-linear editing in general has already caused a profound reduction in the amount of slow, linear searching and editing of clips.
>
> When you're banging-out a script as fast as possible, and everyone gets into a room for a rough cut screening, at many points the question comes up, *"Does that interviewee or actor or commercial talent say that word or phrase better somewhere else?"* Often because a sentence sounds unfinished or there's an odd sound on the tape during that word. If the EP or the producer is in the room asking this, classically everyone would've gone diving into transcripts for the answer, and it would become something to check later. Or the EP and the producer would be forced to sit there talking about whatever while the editor would go grab the tape, pop it into the machine, listen for better iterations of the word or phrase… the process just took too long and it had everyone asking the same question: *"Someday will Avid invent a thing that can listen to all of the audio and tell us where all of the syllables, vowels and like-sounding words can be found? Will they make editing happen phonetically?"*

125.   Avid promotes the search and indexing features of the Accused Products.

126.   The Accused Products are systems and perform methods for accessing an item of interest such as a particular work, phrase, or phonetic string within a video

stream in a Media Composer project.

## Accelerate editing with powerful dialog search

It's back and better than ever! Stop wasting time and money generating transcripts of your projects just to organize and locate media more easily. With PhraseFind—the powerful new version of the acclaimed dialog indexing and search option for Media Composer subscriptions and perpetual licenses and included with Media Composer | Ultimate—you can quickly find all relevant clips by simply typing a word or phrase. PhraseFind automatically analyzes all clips in your project and phonetically indexes all audible dialog, so you can spend less time searching for the right media and more time focusing on what matters most—your story.

127. The user interface presents data from an annotation table within a Media Composer project:



128. In normal operation, the Avid Accused Products search phonetically indexed content to locate annotations of interest.

129.   PhraseFind status indicates when a media stream has been indexed:



130.   The Avid Accused Products store data and location identifiers corresponding to stored representations of data (e.g., object IDs for video content and Mark IN codes or IDs for corresponding to a start time within the stream).

131.   The following description accurately describes operation of PhraseFind:

> Double-clicking a phonetic clip loads the clip into the Source monitor and places the blue position bar on the frame immediately before the dialogue starts. A Mark IN point displays on the frame immediately preceding the audio dialogue, the bin opens and the clip highlights inside the bin. Press the Space bar or Play key to play the clip from the search point.

http://resources.avid.com/SupportFiles/attach/Media_Composer_Editing_Guide_2019.x.pdf.

132.   In normal operation, PhraseFind searches a plurality of annotation values (e.g., phonetically indexed dialog), identifies a start time of a media stream (e.g., MarkIN), and returns query results providing a multimedia content stream in response to a query.

133.   In PhraseFind, when a query is performed, results are displayed in the Results Window in order of importance based upon probability as described and shown below:





## The Results Window

The results of your search display in the Results window for both text find and PhraseFind. You can then filter your findings to narrow your results. You can also choose to display specific columns, and sort or move columns.

In PhraseFind, the Score column lists your results in order of importance (ranging from 100 to 50). The system displays all the results, however, the score with the higher value is more probable the audio dialogue you are searching for.

The system displays the total number of items found after your search and the system also displays the number of items found after filtering.

The system clears the Result window when you close the project.

134.   In normal operation of the Accused Products, Avid searches a plurality of data identifiers (e.g., indexed object IDs) associated with the stored media to locate a data identifier and address (e.g., file storage location) corresponding a particular video as shown below (from https://www.youtube.com/watch?v=uMqLvtRrG04):



135.   The Accused Products access a video stream at a location of interest using the address and Mark IN indicating a start time for a clip.

136.   Mark IN (highlighted below) corresponds to a start time of a particular portion of multimedia content:



137.   Queries relating to media of interest are used to search phonetically indexed dialog to identify an annotation value matching the query.  For example, after PhraseFind indexes media, the "PhraseFind" button on the user interface will initiate a search of the indexed media for phonetic sounds that match or comprise a query term.

It's back and better than ever! Stop wasting time and money generating transcripts of your projects just to organize and locate media more easily. With PhraseFind—the powerful new version of the acclaimed dialog indexing and search option for Media Composer subscriptions and perpetual licenses and included with Media Composer | Ultimate—you can quickly find all relevant clips by simply typing a word or phrase. PhraseFind automatically analyzes all clips in your project and phonetically indexes all audible dialog, so you can spend less time searching for the right media and more time focusing on what matters most—your story.

138.   Start time within a media stream is identified as the Mark IN.

Double-clicking a phonetic clip loads the clip into the Source monitor and places the blue position bar on the frame immediately before the dialogue starts. A Mark IN point displays on the frame immediately preceding the audio dialogue, the bin opens and the clip highlights inside the bin. Press the Space bar or Play key to play the clip from the search point.

139.   Avid identifies a probability representing a measure of confidence in the accuracy of the annotation value at each particular time and returns a "score."



140.   Avid provides the following explanation of the Score column in the PhraseFind window:

**What does the Score column in the PhraseFind window mean?**

The Score indicates how closely the result phonetically matches your search terms. Scores can range from 100 to 50. The higher the score, the higher probability the clip matches the phonetic search text.

141.   Avid describes the benefits of phonetic indexing in MediaComposer|Phrase Finder in promotional materials and press releases:

Media Composer | PhraseFind Option's powerful automatic phonetic indexing of media enables video professionals to quickly and easily find the media they need by searching for spoken words and phrases. It saves users valuable time by delivering fast search results and eliminating the need to review and log hundreds of hours of material to find what they need.

142.   MediaComposer|Phrase Finder infringes all three Asserted Patents.

143.   Avid's Media Composer|ScriptSync phonetically indexes a user's media

and links the user's clips to the user's imported script text.

Media Composer | ScriptSync Option



144.   Avid publishes the following description of how ScripSync works:

**How does ScriptSync work?**

ScriptSync indexes all of the bins in your project and creates a database of all of the phonetic information for each clip. It then uses traditional lined scripts or transcripts that you import into Media Composer to automatically associate the media clip with the text of the script. You can then easily and accurately search and instantly access the targeted content during the editorial process.

145.   ScripSync creates a PhoneticData folder containing files with a .pat extension that contain phonetic information for each audio clip within a project.

146.   Avid publishes the following description of ScripSync:

## Speed up script-based editing

It's back and better than ever! With ScriptSync—a powerful dialog search and sync option for Media Composer subscriptions and perpetual licenses and included with Media Composer | Ultimate—you can eliminate time-consuming manual media searches and quickly find the best take or perfect clip fast. ScriptSync phonetically indexes all text and audible dialog in your project automatically and then syncs each source clip to its associated line in the script. Once synced, you can quickly locate all relevant clips in seconds based on a scene number, page number, or word or phrase search, enabling you to compare performances in the context of your story.

147.    ScripSync is purchasable as an option to add on to Media Composer and Media Composer Ultimate (similar to the Symphony or NewsCutter options).

148.    MediaComposer|ScripSync infringes U.S. Patent Nos. 6,173,287 and 6,311,189.

149.    When ScripSync executes a query, it searches a plurality of annotation values in the PhoneticData folder.

150.    Avid Dialogue Search provides metadata search and filtering capabilities that locate items of interest in media content.



Speech is ubiquitous. That's why it can be such a challenge finding that certain clip you need from hundreds of hours of dialogue-heavy footage. Avid Dialogue Search makes the task fast and easy. Simply type words or phrases, and Dialogue Search locates every clip that contains these spoken words in seconds—across all available asset management, storage, and archive systems. And with powerful metadata search and filtering, you can capitalize on media that would have gone otherwise unnoticed, increasing your monetization opportunities.

151.    Avid Dialogue Search analyzes phonemes in media content and provides a confidence score and relevancy sorting.

152. Dialogue Search presents results and previews clips containing the search criteria.

153. Avid publishes the following description of Dialogue Search access to stored content:



**GET EASY, FLEXIBLE DEPLOYMENT**

Avid Dialogue Search is available as a standalone browser-based application or it can power search functionality in a variety of software applications through the JSON-based REST API. And it doesn't have to be limited to one media source; it can aggregate results from all of your media libraries.

154. Dialogue Search stores data and location identifiers corresponding to stored representations of data (e.g., object IDs for video content and Mark IN codes or IDs for corresponding to a start time within the stream).

155. Avid publishes the following description of Dialogue Search capabilities:

**Intelligent media search. Simplified.**

Speech is ubiquitous. That's why it can be such a chore and challenge to find that certain clip you need from hundreds of hours of dialogue-heavy footage. Avid Dialogue Search makes the task easy. Simply type any combination of words or phrases, and Avid Dialogue Search will locate every clip that contains these spoken words in seconds—across all available storage and archives. And with its powerful metadata search and filtering capabilities, you can find and utilize media that would have gone otherwise unnoticed, increasing your media monetization opportunities.

156.   Dialogue Search matches a search request to a portion of media and enables users to view content results.

157.   Dialogue Search queries media content across storage locations (available media) for a spoken word or words or an annotation value or plurality of annotation values.  Users enter search terms in the interface:



158.   Query results are displayed with a confidence value.



159.   Dialogue Search identifies content and provides a start time of the media stream for each portion of content corresponding to the search value.   The media includes audio and video media.

160.   In Dialogue Search, hits are indicated on the video timeline and listed in the result window.



161.   With Dialogue Search, an item of interest within a particular asset can be accessed along with searchable metadata, which may be displayed for each content hit.



162.   The annotation of interest has an associated data identifier which corresponds to the particular one of the stored representations of data (e.g. asset ID or name).  The location identifier corresponds to start and stop times within content.

163.   Dialogue Search accesses the item of interest at the location of interest using the associated address and location identifiers.

164.   Avid Dialogue Search infringes all three Asserted Patents.

165.   In normal operation, the Avid Accused Products perform each and every step of the '144 patent claims.

166.   For example, PhraseFind performs a method for phonetically indexing audible dialog in videos (annotating media) by identifying and associating one or more particular times corresponding with dialogue within a multimedia stream.

167.   PhraseFind identifies a probability representing a measure of confidence

in accuracy of an annotation value at one or more particular times.

> **What does the Score column in the PhraseFind window mean?**
>
> The Score indicates how closely the result phonetically matches your search terms. Scores can range from 100 to 50. The higher the score, the higher probability the clip matches the phonetic search text.

168.   PhraseFind provides a score indicating the probability that a clip

matches the query terms:



## COUNT I
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 6,311,189

169.   Eureka realleges and incorporates by reference the allegations set forth in

the preceding paragraphs as if set forth verbatim in this Count.

170.   Eureka is the owner, by assignment, of U.S. Patent No. 6,311,189, titled

"Technique for Matching a Query to a Portion of Media."

171.   As the owner of the '189 Patent, Eureka holds all substantial rights in and

under the '189 Patent, including the right to grant sublicenses, exclude others, and to

enforce, sue, and recover damages for past and future infringement.

172.   The United States Patent Office granted the '189 Patent on October 30,

2001.

173.   The '189 Patent is valid, enforceable, and was duly issued in full

compliance with Title 35 of the United States Code and a full examination by the

Patent Office.

174.  Defendant has been practicing one or more claims of the '189 Patent, including at least claims 1, 9-11 by making, using, monetizing, testing, offering for sale, selling, and/or importing the Avid Accused Products provide indexing, annotations, coding, and the ability to search and display media.

175.  Avid has directly infringed the '189 Patent by making, deploying, testing, using, providing, monetizing, and licensing the Avid Accused Products.

176.  Avid directly infringes the '189 Patent by making, using, selling, offering for sale, and/or importing the Accused Products that include the multimedia (e.g. video) marking, tagging, labeling, indexing, searching and displaying functionality.

177.  For example, the Avid Accused Products practice each and every step of claim 1 when performing a method for matching a query to a portion of media.

178.  The Avid Accused Products receive a query relating to media of interest (e.g. video content).  For example, Media Composer allows users to search for a particular spoken word or phrase.

179.  The Avid Accused Products search, based upon the query, a plurality of annotation values corresponding to a portion of a media item to identify an annotation value matching the query and identify a start time (e.g., Mark IN) in a media stream corresponding to the identified annotation value and return the identified media start time in response to the query. An example of query results identifying a media start times is shown below:

180. Defendant's infringing conduct described in this Count has damaged Eureka. Avid is liable to Eureka in an amount that adequately compensates it for infringement, which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT 2 - INFRINGEMENT OF U.S. PATENT NO. 6,173,287

181. Eureka realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if set forth in this Count.

182. Eureka is the owner, by assignment, of U.S. Patent No. 6,173,287, titled "Technique for Ranking Multimedia Annotations of Interest."

183. As the owner of the '287 Patent, Eureka holds all substantial rights in and under the '287 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

184. The United States Patent Office granted the '287 Patent on January 9, 2001.

185. The '287 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a complete examination by the Patent Office.

186. Avid has been practicing one or more claims of the '287 Patent, including

at least claims 1-4, 6, 7, and 10 by making, using, offering for sale, monetizing, selling, and/or importing the Accused Products that provide functionality including indexing, annotating, labeling, tagging, coding, and the ability to query and display media content.

187.  Avid has directly infringed the '287 Patent by deploying, testing, using, monetizing, and operating Avid Accused Products.

188.  Avid directly infringes the '287 Patent by making, selling, offering for sale, and importing the Accused Products.

189.  For example, the Accused Media Composer products practice each and every step of claim 1 by performing the method of accessing an item of interest (e.g., a particular word or phrase) within a particular one of a plurality of stored representations of data (e.g., video content or files).

190.  The Avid Accused products search a plurality of stored annotations corresponding to different items within the plurality of stored representations of data to locate an annotation of interest corresponding to the item of interest.  For example, Media Composer identifies an annotation of interest (e.g., a particular instance of a spoken word) from among the videos.  A particular keyword has an associated data identifier (e.g., the textual representation) and an associated location identifier (e.g., a timestamp).

191.  The Avid Accused Products search a plurality of stored data identifiers associated with the plurality of stored annotations to locate the associated data

identifier and an associated address identifier, the associated address identifier corresponding to an address of the particular one of the plurality of stored representations of data within the plurality of stored representations of data. For example, Media Composer identifies a particular instance, keyword, or label from a multitude of possible instances, keywords, or labels and locates an associated data identifier (e.g., the textual representation) and an associated address identifier.

192.   The Avid Accused Products access the item of interest at the location of interest using the associated address identifier and associated location identifier. For example, Media Composer accesses the multimedia item of interest at the location of interest using a name and bin for each multimedia stream of interest and a Mark IN timestamp or other code indicating a particular position in a video timeline.

193.   Avid's product description highlights infringing functionality as delivering benefits of faster searching and more effective location of "the right media."

### Accelerate editing with powerful dialog search

It's back and better than ever! Stop wasting time and money generating transcripts of your projects just to organize and locate media more easily. With PhraseFind—the powerful new version of the acclaimed dialog indexing and search option for Media Composer subscriptions and perpetual licenses and included with Media Composer | Ultimate—you can quickly find all relevant clips by simply typing a word or phrase. PhraseFind automatically analyzes all clips in your project and phonetically indexes all audible dialog, so you can spend less time searching for the right media and more time focusing on what matters most—your story.

194.   As a result of Avid's infringing conduct described in this Count, Eureka has been damaged. Defendant is liable to Eureka in an amount that adequately compensates it for Defendant's infringement, which, by law, can be no less than a

reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT 3 - INFRINGEMENT OF U.S. PATENT NO. 6,332,144

195.  Eureka realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if set forth in this Count.

196.  Eureka is the owner, by assignment, of U.S. Patent No. 6,332,144, titled "Technique for Annotating Media."

197.  As the owner of the '144 Patent, Eureka holds all substantial rights in and under the '144 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

198.  The United States Patent Office granted the '144 Patent on December 18, 2001.

199.  The '144 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a complete examination by the Patent Office.

200.  Avid has been practicing one or more claims of the '144 Patent, including at least claims 1-5, 11, 13, 14, and 15 by making, using, offering for sale, monetizing, selling, and/or importing the Avid Accused Products that provide functionality including indexing, annotating, labeling, tagging, coding, and the ability to search (query), probabilistically analyze and measure and display media.

201.  Avid has directly infringed the '144 Patent by deploying, testing, using,

monetizing, and operating the Avid Accused Products.

202.  Avid directly infringes the '144 Patent by making, selling, offering for sale, and importing the Accused Products.

203.  The Avid Accused Products use methods for accessing an item of interest (e.g., a spoken word or phrase) within a particular one of a plurality of stored representations of data (e.g., a video).

204.  The Avid Accused Products practice each and every element of claim 1 by performing a method for annotating media comprising the steps of identifying one or more particular times within a period defined by start/end times within a media content stream at which content corresponds to an annotation value, associating the annotation value with the identified time(s), and identifying a probability representing accuracy of the annotation value corresponding to the identified time(s).

205.  For example, PhraseFind performs a method for phonetically indexing audible dialog in videos (annotating media) by identifying and associating one or more particular times corresponding with dialogue within a multimedia stream.



206.  Further with respect to claim 1, PhraseFind identifies a probability representing a measure of confidence in accuracy of an annotation value at one or more particular times.

> **What does the Score column in the PhraseFind window mean?**
>
> The Score indicates how closely the result phonetically matches your search terms. Scores can range from 100 to 50. The higher the score, the higher probability the clip matches the phonetic search text.

207.    PhraseFind provides a score indicating the probability that a clip matches the query terms:



208.  As a result of Avid's infringing conduct described in this Count, Eureka has been damaged.  Defendant is liable to Eureka in an amount that adequately compensates it for Defendant's infringement, which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## PRAYER FOR RELIEF

Eureka prays for the following relief:

a)  A judgment be entered that Defendant has directly infringed one or more claims of the Asserted Patents;

b)  A judgment be entered that the Asserted Patents are valid and enforceable;

c)  Eureka be awarded damages adequate to compensate for Defendant's infringement up until the date such judgment is entered, including prejudgment and post-judgment interest, costs, and disbursements as

justified under 35 U.S.C. § 284 and, if necessary, to adequately compensate Eureka for Defendant's infringement, an accounting;

d) A judgment that Eureka be awarded attorneys' fees, costs, and expenses incurred in prosecuting this action; and

e) A judgment that Eureka be awarded such further relief at law or in equity as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Eureka Database Solutions, LLC demands trial by jury for all issues so triable pursuant to Fed. R. Civ. P. 38(b) and Civil L.R. 3-6(a).


November 13, 2019                By  /s/ *Cabrach Connor*

STEVEN M. LOBBIN
California Bar No. 181195
sml@smlavvocati.com
SML AVVOCATI P.C.
SML Avvocati P.C.
969 Hilgard Avenue, Suite 1012
Los Angeles, CA 90024
Telephone: 949.636.1391

Cabrach J. Connor
Texas Bar No. 24036390 (*pro hac vice* forthcoming)
cab@connorkudlaclee.com
Jennifer Tatum Lee
Texas Bar No. 24046950 (*pro hac vice* forthcoming)
jennifer@connorkudlaclee.com
**CONNOR KUDLAC LEE PLLC**
609 Castle Ridge Road, Suite 450
Austin, TX 78746
Telephone:  512.777.1254
Facsimile:  888.387.1134

*Attorneys for Plaintiff*
Eureka Database Solutions LLC